**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Michael Wyan COOL and Marilyn D.
Cool, Defendants-Appellants.**

**No. 71–1443.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 2, 1972.

Decided April 26, 1972.

Rehearing Denied June 13, 1972.

522

Tyce S. Smith, Chicago, Ill., for defendants-appellants.

Stanley B. Miller, U. S. Atty., Richard L. Darst, Asst. U. S. Atty., Charles Goodloe, Jr., Asst. U. S. Atty., S.D. Ind., Indianapolis, Ind., for plaintiff-appellee.

Before KNOCH, Senior Circuit Judge and STEVENS and SPRECHER, Circuit Judges.

KNOCH, Senior Circuit Judge.

The Defendants, Michael Wyan Cool and Marilyn D. Cool, were found guilty in a jury trial of violating Title 18 U.S. C. § 472, in possessing and concealing, with intent to defraud, counterfeit obligations, securities of the United States. Michael Cool was sentenced to serve ten years and Marilyn Cool, three years. This appeal followed.

There were marked conflicts in the testimony providing several issues of fact which turned on the credibility of the witnesses. A few examples are set out below.

On June 2, 1970, the defendants and Robert E. Voyles traveled together from St. Louis, Missouri, to Brazil, Indiana. Mr. Voyles and Mrs. Cool testified that the Cools were driving to New York to visit a relative and Mr. Voyles was traveling with them. He said he planned to leave them at Detroit, Michigan, to visit his uncle in Pontiac. At the time he was testifying as a witness for the defendants, Mr. Voyles had already pleaded guilty to an indictment, one count of which charged him with acting in complicity with the defendants to possess and conceal about $8300 in counterfeit $20 Federal Reserve Notes. He testified that he was carrying this counterfeit in a satchel, but he denied that either of the defendants knew that the satchel which he had brought into the automobile contained counterfeit.

He testified further that, unbeknown to the defendants whom he left in a restaurant in Brazil with the excuse that he was going to visit friends, he did pass two counterfeit $20 bills. Other witnesses testified that he bought small items of women's wear in two stores in Brazil. He said that he got the keys to the automobile trunk in which he stowed the satchel from Mr. Cool. He testified that he took a few counterfeit bills only and concealed the sack containing the rest of the counterfeit under the front bumper by the headlight and then returned the keys to Mr. Cool in the restaurant.

As he was leaving the second store in which he had passed counterfeit, he was seen to approach a parked automobile in which both defendants were sitting, Mr. Cool at the wheel. Mr. Voyles was recognized by one of his earlier victims who pointed him out to two Brazil City Police Officers. He was seen entering the passenger side next to Mrs. Cool.

After his arrest, Mr. Voyles rode to the police station in the police car and the two defendants were asked to follow in their own automobile.

Mrs. Cool testified that when Mr. Voyles had not returned after about thirty minutes, knowing that Brazil was not a large town, she and her husband went to look for Mr. Voyles in the main section of town and had just seen him and pulled over to pick him up when the

police arrived. Mr. Voyles testified to the same effect.

The jury could have discredited this explanation of the defendants' presence at the scene of the offense and concluded that they were in fact deliberately waiting to pick up Mr. Voyles knowing the real nature of his errand.

At the police station, the defendants were listed in the arrest reports as Alford and Marilyn Gibbs. Special Agent R. David Freriks testified that the defendants gave him their names as Marilyn and Alford Marvin Gibbs at their initial interview with him.

Mr. Voyles testified that he gave the name of Robert Gibbs as that was the name he was using. He said when he was out of town, he liked to have some kind of identification, even if it were not his own. Officer Harrison testified that Mr. Voyles said he and Mr. Cool were brothers. Mrs. Cool denied giving her name as other than "Marilyn," which Mr. Voyles corroborated, although her husband did give his name as "Gibbs." City Attorney and County Prosecutor John Baumunk testified that the defendants indicated that they were husband and wife.

Mrs. Cool explained this concerted use of the name "Gibbs." She testified that when all three entered the police station, Mr. Voyles had asked the defendants to give the name "Gibbs" because Mr. Voyles did not want his real name on record. She said that her husband complied with this request; she refused to do so.

At the time of her arrest, Mrs. Cool was carrying in her purse the total sum of $568.81 in valid currency arranged in little packets and stowed in various compartment of her purse. Mrs. Cool testified that all this money was the personal property of her husband and herself, that none of it was the proceeds of the various passings of counterfeit and that it was maintained in this fashion merely to keep it handy. Government counsel argued to the jury that it would be a reasonable inference that these individu-

al packets represented the proceeds of individual transactions in passing counterfeit. It may also be significant that Mr. Voyles was to pay his seller by bringing back 30% of the proceeds of passing the counterfeit.

When the police and the defendants arrived at the police station, they were joined by Mr. Baumunk who produced a paper sack which he said he had seen Mrs. Cool throw from the automobile en route, as she and her husband were following the police car to the station. The sack contained counterfeit money. Mr. Baumunk testified to the circumstances which drew his attention to the defendants' automobile and to the maneuvers he executed which enabled him to see the sack being thrown out, to pick it up and to arrive at the police station almost at the same time as the other two automobiles.

The defendants characterize Mr. Baumunk's testimony as completely incredible. In her testimony Mrs. Cool said that the sack was not in the automobile with her, that she first saw it at the police station, that she was innocent of any contact with counterfeit and that Mr. Baumunk had lied in his testimony. The defense presented a possible explanation for Mr. Baumunk's finding the sack in the road, based on Mr. Voyles' description of his hiding it at the front of the car frame, from which it might have been jolted loose and fallen.

Mr. Voyles testified further that as he sat down in the defendants' automobile, after the second incident of passing counterfeit, he saw the police car, took several counterfeit bills from his wallet, crumpled them up and put them underneath the front seat beside his left leg. He said he was sure that neither of the defendants saw him do that. A policeman came up immediately after that and asked if Mr. Voyles had been doing any shopping in Brazil. Three crumpled counterfeit $20 bills were found later under the right center of the front seat.

Mr. Voyles repeatedly said that the defendants were not parties to his activ-

ities, knew nothing of what he was doing and were completely innocent, although, as the government notes, he did corroborate some of the specific facts which went to make up the government's case.

■ Because many issues did turn on credibility, the defendants argue that it was reversible error to give an "accomplice" instruction over objection of the defense.[1]

They contend that this instruction is in order only where the alleged accomplice testified for the prosecution and not where he confesses himself the sole perpetrator of the crime and fully exculpates the defendants. As they see it, an instruction designed only to protect defendants was used here to destroy the presumption of innocence and the effect of the prior instruction.[2]

The defendants argue that Mr. Voyles was testifying to his own disadvantage, a circumstance that carried its own indicia of credibility from which the Trial Judge should not have detracted by the "accomplice" instruction. They contend that by referring to Mr. Voyles, who had pleaded guilty, as an "accomplice" the Trial Judge was in effect telling the jury that defendants were guilty. We do not so read the instruction.

The Fifth Circuit has had occasion recently to consider the question of an "accomplice," defined as one who could have been indicted as a principal or accessory in the offense for which the defendant on trial is charged, when he is a

---

1. The Court instructed the jury:

INSTRUCTION NO. 18

An accomplice is one who, with criminal intent, acts with others and participates in the commission of a crime. An accomplice is competent as a witness in a criminal case.

It is a general principle that in considering the credibility of an accomplice that his testimony is open to suspicion for it may be actuated by self-interest, hostility, bias, hope of reward or other motivation, and his testimony should be carefully weighed and tested before giving it unlimited credence. As a general principle it is not safe to accept an accomplice's testimony unless it is corroborated by testimony of other persons or facts and circumstances clearly tending to prove it. His credibility must be determined by you as you will test the credibility of all witnesses as explained in these instructions.

However, I charge you that the testimony of an accomplice is competent evidence and it is for you to pass upon the credibility thereof. If the testimony carries conviction and you are convinced it is true beyond a reasonable doubt, the jury should give it the same effect as you would to a witness not in any respect implicated in the alleged crime and you are not only justified, but it is your duty, not to throw this testimony out because it comes from a tainted source.

I further instruct you that testimony of an accomplice may alone and uncorroborated support your verdict of guilty of the charges in the Indictment if believed by you to prove beyond reasonable doubt the essential elements of the charges in the Indictment against the defendants.

In determining whether or not the testimony of an accomplice has been corroborated, you will examine all of the evidence to ascertain pursuant to these instructions whether or not there is evidence tending to connect the defendants on trial with the alleged crime from evidence elicited from other sources than the the testimony of the accomplice. You will look to the other testimony, and circumstantial evidence. Corroboration does not mean that every detail of the accomplice's testimony be testified to by another witness. Corroboration sought is of such material facts of the accomplice's testimony that would lend or detract from the credence of his testimony of such facts essential to the crime charged. Corroboration may be by direct or positive testimony or it may be by inferences or deductions drawn from established facts in evidence that in your opinion are warranted or justified or merited. The Court cannot say to you what is corroborated, that is for you to ascertain and determine from all the evidence beyond a reasonable doubt.

2. INSTRUCTION NO. 17

If you find from the evidence that Robert E. Voyles, a co-defendant, has pleaded guilty to the offense charged in count one of the Indictment in and of itself is not evidence of the guilt of the defendants now being tried, or that a crime was committed.

witness called by the defense. The Fifth Circuit in United States v. Nolte, 1971, 440 F.2d 1124, 1126–1127, cert. den. 404 U.S. 862, 92 S.Ct. 49, 30 L.Ed. 2d 106, reasons persuasively that the better practice is to give the instruction regardless of the party calling the witness.

The defendants would distinguish *Nolte* because there one "accomplice" testified for the government and another for the defense. However, a similar effect was produced here. As indicated, Mr. Voyles' testimony adduced to exonerate the defendants did nevertheless also provide corroborative detail for the government's case. The instructions as a whole clearly left issues of credibility solely to the jury. There was no shift, as defendants complain, in the burden of proof. We find no reversible error in the instructions.

The jury could have concluded from the evidence that the defendants were fully aware of Mr. Voyles' activities and were co-operating with him, that they knew about the counterfeit money in their automobile, that they had agreed in advance to give the same false name if stopped by the police, that Mrs. Cool did attempt to dispose of some of the evidence by throwing it out of the automobile and that the individual packets of money in the various compartments of her purse did represent the fruits of the various transactions handled by Mr. Voyles as part of a common activity.

■ A Senior Circuit Judge Hastings, speaking for this Court in United States v. Sangster, 1971, 442 F.2d 1289, 1293, said:

> It is now axiomatic that in resolving the issue of sufficiency of the evidence to sustain a conviction, questions of credibility and the weight to be assigned to the evidence are for the jury to determine.

After consideration of the evidence in the light most favorable to the government, as we must view it, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, together with all reasonable inferences susceptible of being drawn from it, we conclude that the government did sustain its burden of proof.

We are asked to review the three-year sentence imposed on Mrs. Cool as excessive and an abuse of discretion. The defendants urge us to consider her as a young lady who has never been a burden to society and who, at worst, is a housewife caught in a morass of unfortunate circumstances, who will not in future constitute any threat to society and whose incarceration will serve no beneficial purpose.

■ The possible penalties for the offense of which Mrs. Cool was found guilty include a fine of $5,000, imprisonment for 15 years, or both. We do not find here such extraordinary circumstances as would justify our setting aside the sentence of the District Judge. United States v. Rook, 7 Cir., 1970, 424 F.2d 403, 406, cert. den. 398 U.S. 966, 90 S.Ct. 2180, 26 L.Ed.2d 550.

The judgment of the District Court is affirmed.

Affirmed.