UNITED STATES of America,
Plaintiff-Appellee,

v.

Nemecio CERVANTES, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Helen PANAS, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

William D'AMBROSIO, Defendant-
Appellant.

Nos. 18009, 18010 and 18302.

United States Court of Appeals,
Seventh Circuit.

March 6, 1972.

Certiorari Denied Oct. 10, 1972.
See 93 S.Ct. 108.

Arthur J. O'Donnell, William Levinson, Chicago, Ill., for defendants-appellants.

James R. Thompson, U. S. Atty., William T. Huyck, Asst. U. S. Atty., William J. Bauer, U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before KNOCH, Senior Circuit Judge, and KILEY and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

Three defendants have appealed from their convictions by a jury of making and passing counterfeited obligations of the United States.

The defendant Nemecio Cervantes was found guilty under Counts II and VI, the defendant Helen Panas under Counts I and IV, and the defendant William D'Ambrosio under Counts IV, V and VI, of passing counterfeited obligations of the United States with intent to defraud in violation of 18 U.S.C. § 472.[1] All three defendants were also found guilty under Count VII of a conspiracy in violation of 18 U.S.C. § 371 to make and pass counterfeited obligations in violation of 18 U.S.C. §§ 471,[2] 472, 473 and 474. Cervantes and D'Ambrosio were sentenced to ten years and Panas to six months with five years' probation.

The indictment alleged acts occurring throughout a six-month period from August 21, 1964 to February 20, 1965. It named as co-conspirators but not as defendants five persons other than the three defendants. The evidence revealed that other persons occasionally participated in the alleged criminal acts with the eight named in the indictment. Testifying on behalf of the government were three of the co-conspirators, Chester Johnson, Marguerite Swartz and John Lecas. Most of the evidence came from these three witnesses.

The evidence disclosed that Helen Panas passed a counterfeit $20 bill at a drive-in restaurant on August 21, 1964. She was with an unidentified male in an automobile registered in one of her aliases. Swartz and Lecas testified that Panas told them subsequently that she had passed counterfeit $20 bills with D'Ambrosio in the car.

On September 15, 1964, Lecas bought $2,000 worth of $20 counterfeit bills from Cervantes at the Cullerton Lounge for $700. Swartz was present; both she and Lecas testified that Cervantes had said that he received the counterfeit money from D'Ambrosio. Thereafter Swartz accompanied Cervantes in passing counterfeit $20 bills.

In the latter part of October, D'Ambrosio and Don Johnson discussed

---

1. "Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

2. "Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

with Lecas plans to make $100,000 worth of counterfeit $10 bills. D'Ambrosio drove Lecas to Wisconsin and showed him two counterfeit $100 bills which he said he had printed.

In November, D'Ambrosio told Chester Johnson (no relation to Don Johnson) that the counterfeit $10 bills would be ready soon. He took Johnson blindfolded to his apartment. Johnson was returned home by Panas, who was told by D'Ambrosio to drop off two bottles of green ink at the printers on the way.

Late in November, D'Ambrosio asked Swartz to become an investor in making counterfeit money. She gave him $770 and was promised $3,770 in return. He then took her to a stationery store to buy 100 percent rag bond paper.

For three days from December 7 through December 9, 1964, Swartz, Panas and Don Johnson were confined in an apartment at 508 North Monticello Street in Chicago, where they processed counterfeit $10 bills under D'Ambrosio's supervision. D'Ambrosio told Swartz that another group was working in another apartment and was producing the counterfeit bills at a faster rate. At about this same time Chester Johnson went to the Esquire Theatre in Chicago, where Don Johnson was the projectionist, and saw counterfeit $10 bills hanging to dry on clothes lines in the projection booth. Part of the process at 508 North Monticello and in the projection booth consisted of dipping the bills in a container of coffee and then drying them out.

On December 10, Chester Johnson, who was then working for the Secret Service, received 48 counterfeit $10 bills from D'Ambrosio and Cervantes. On December 11, D'Ambrosio and Cervantes took Swartz with them to Calumet City, Illinois, where they transferred a paper bag to a Thunderbird automobile in exchange for money. D'Ambrosio then asked Cervantes if he could get some more "garbage" counterfeit money; Cervantes replied that there was some in the washing machine in his mother's house. Thereafter Cervantes told both Lecas and Swartz that he had been selling counterfeit $10 bills in New York and Chicago.

On February 20, 1965, Don Johnson sold $8,310 worth of counterfeit $10 bills to an undercover Secret Service agent in a bar; Cervantes was also in the bar. D'Ambrosio's fingerprint was found on one of the counterfeit $10 bills.

All three defendants contended that the government failed to prove a single conspiracy, but rather introduced evidence as to at least two separate and distinct conspiracies—a $20 counterfeit conspiracy and a $10 counterfeit conspiracy.

▮ The fact that a conspiracy's various members may play different roles in executing it and may have dissimilar motives for participating in it, does not mean that a single conspiracy does not exist. United States v. Hoffa, 367 F.2d 698, 706 (7th Cir. 1966), vacated on other grounds, 387 U.S. 231, 87 S. Ct. 1583, 18 L.Ed.2d 738 (1967). While a conspiracy may have a small core of conspirators, other parties who join and terminate their relationships at various times in order to participate with the core conspirators to achieve a common goal may be members of the over-all conspiracy. United States v. Varelli, 407 F.2d 735, 742 (7th Cir. 1969).

▮ We hold that the proof in this case was sufficient for the jury to find that a single conspiracy to make and pass counterfeit money did exist and that each defendant was a knowing member of it. United States v. Cerone, 452 F.2d 274 at 284 (7th Cir. 1971), cert. denied 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972).

All three defendants claimed error in the failure of the trial court to grant trials of the substantive counts separate from the conspiracy count and separate from each other.

Judge Hastings had occasion to consider the problems of severance in great detail in United States v. Kahn, 381 F. 2d 824, 838–839 (7th Cir.), cert. denied,

389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967), where he said:

"Severance of offenses and defendants is discretionary with the trial court. . . .

"Generally, where the indictment charges a conspiracy, or a crime having a principal and aider-abettors, the rule is that persons jointly indicted should be tried together. . . . And where proof of the charges against the defendants is dependent upon the same evidence and alleged acts, as is the case when the charged relationship of the defendants. is principal-aider-abettor, severance should not be granted except for the most cogent reasons. . . .

"Thus, with respect to a severance in a trial of co-conspirators or co-defendants, it is necessary to determine whether a joint trial infringes a defendant's right to a fundamentally fair trial. . . . This determination is made by asking whether it is within the jury's capacity, given the complexity of the case, to follow admonitory instructions and to keep separate, collate and appraise the evidence relevant only to each defendant. . . . [T]he defendants must make a strong showing of prejudice."

■ The main thrust of each defendant's argument as to severance is that it would have been difficult to convict upon any single count in fragmented trials. "The moving party must show prejudice, that he will be unable to obtain a fair trial without severance, not merely that a separate trial will offer a better chance of acquittal." United States v. Blue, 440 F.2d 300, 302 (7th Cir. 1971).

In this case the issues were relatively simple and the trial court gave complete admonitory instructions. A review of the evidence fails to disclose such complexity or confusion, likely to be created in the minds of the jurors to the prejudice of the defendants, which would rise to the level of an abuse of discretion by the trial court in denying severance.

■ It is true that the government's case depended to a great extent upon the testimony of three unindicted co-conspirators. Although conviction may rest on the uncorroborated testimony of accomplices (United States v. Gebhart, 436 F. 2d 1252, 1254 (8th Cir. 1971); United States v. Carengella, 198 F.2d 3, 7 (7th Cir.), cert. denied, 344 U.S. 881, 73 S.Ct. 179, 97 L.Ed. 682 (1952); United States v. Platt, 156 F.2d 326, 327 (7th Cir. 1946)), here there was corroborative evidence upon which the jury could also rely, such as the great number of counterfeit bills in evidence.

The trial court instructed fully on the subjects of conspiracy, testimony of accomplices and the effect on their testimony of prior convictions of felonies.

Cervantes and D'Ambrosio argued that the government's proposed Instruction 20 was erroneous on the ground that it told the jury that the indictment charged a conspiracy to pass and sell, as well as make, counterfeit money. The government correctly points out, however, that the contested paragraph of the proposed instruction was deleted at the defendants' request and was not read to the jury (Tr. 1085, 1238–39).

Defendant Helen Panas argued that the government failed to prove that she had knowledge that the $20 bill which she passed at the drive-in was counterfeit.

■ The mere passing of a counterfeit bill is not sufficient to show knowledge on the part of the passer that it was counterfeit. United States v. Alea, 433 F.2d 948, 949 (5th Cir. 1970); Miller v. United States, 392 F.2d 790, 792 (10th Cir. 1968); Paz v. United States, 387 F.2d 428, 430 (5th Cir. 1967); United States v. Litberg, 175 F.2d 20, 23 (7th Cir. 1949). Nevertheless, it is well

established that guilty knowledge, and especially the intent to defraud, since it can rarely be shown by direct evidence, may be found by the jury from the total actions of the defendant (*Miller, supra* 392 F.2d at 792). The jury may scrutinize the entire conduct of the defendant at or near the time when the money was passed (*Paz, supra* 387 F.2d at 301; United States v. Carlson, 359 F.2d 592, 597 (3d Cir.), cert. denied, Bonomo v. United States, 385 U.S. 879, 87 S.Ct. 161, 17 L.Ed.2d 106 (1966)) and may consider evidence of like offenses (United States v. Platt, 156 F.2d 326, 327 (7th Cir. 1946)).

■ The fact that, a few months after the passing of the $20 counterfeit bill at the drive-in, Panas actually participated for three days in the processing of $10 counterfeit money, as well as her delivery of two bottles of green ink to the printer and her telling two witnesses that she had previously passed counterfeit money, warranted the jury's finding that Panas had guilty knowledge and specific criminal intent to pass a counterfeit bill. United States v. Dodd, 444 F.2d 1402, 1403 (8th Cir. 1971); United States v. Trotter, 433 F.2d 113, 116 (7th Cir. 1970), cert. denied, 401 U.S. 942, 91 S.Ct. 950, 28 L.Ed.2d 224 (1971); United States v. Casey, 431 F.2d 953, 954 (5th Cir. 1970); United States v. Jonikas, 187 F.2d 240, 242 (7th Cir. 1951), cert. denied, 344 U.S. 877, 73 S.Ct. 171, 97 L.Ed. 679 (1952); United States v. Kelley, 186 F.2d 598, 603 (7th Cir.), cert. denied, 341 U.S. 954, 71 S.Ct. 1004, 95 L.Ed. 1375 (1951).

■ Finally, Cervantes and D'Ambrosio have argued that the proof was not sufficient to warrant the jury's finding them guilty under Count VI, which involved the sale of 831 counterfeit $10 bills to a Secret Service agent. We have examined the entire record closely and find the evidence sufficient.

The convictions of all three defendants are affirmed.