**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Debra K. BOLIN, Defendant–Appellant.**

No. 93–3918.

United States Court of Appeals,
Seventh Circuit.

Argued May 18, 1994.

Decided Sept. 13, 1994.

Rodger A. Heaton, Asst. U.S. Atty., Springfield, IL (argued), for plaintiff-appellee.

Ronald E. Boyer (argued), Mark Bryan Thompson, Boyer & Thompson, Watseka, IL, for defendant-appellant.

Before CUDAHY, SPROUSE,* and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Debra K. Bolin's boyfriend, Brian K. Barragree, worked in his father's printing shop. He was not earning much money at his job, so he began to "make" money at the printing shop, after hours. Bolin knew of and participated in Barragree's counterfeiting project. They tried to involve a friend, Sam Eller, in the distribution of the counterfeit money. Bolin and Barragree both gave Eller some counterfeit ten dollar bills. Eller went to the police, and handed over the counterfeit bills. The police equipped Eller with a recording device, and sent him back to talk to Bolin and Barragree.

Eller met Bolin and Barragree at their home. A lengthy conversation was recorded, during which Bolin made many incriminating statements. She referred to a trip she made to the bank to get sample one dollar bills. She referred to a plan to bury some of the counterfeit bills, and to circulate the rest of it. Eller offered to enlist his sister to help distribute the bills, and Bolin suggested that he call her, and that they would have "something" for Eller's sister by Friday.

Bolin also made other statements indicating her involvement in the counterfeiting project. She commented that "it took us a long time to get the detail in here" and that "we do it at night time." She also commented that Barragree's parents had "never seen us print it, or anything, cut it." When discussing splitting the profits from the counterfeiting project, Bolin said that they would not have to split it with anyone, and Barragree added that "us three right here sitting at the table" and "you know, you, me and Deb are the only ones in it so far."

Eller left the house, and returned later that day. When he returned he saw uncut sheets of counterfeit bills drying. Another conversation was recorded. The three of them discussed the drying of the sheets, and whether ironing the bills would be harmful. Eller commented that they were going to make a lot of money, and Bolin said that she and Barragree would be able to retire and move away. Barragree gave Eller five more counterfeit bills, which Eller turned over to the police.

Federal officials obtained a search warrant based on the information provided by Eller, and searched the home of Bolin and Barragree. They found 104 counterfeit ten dollar bills and 22 uncut sheets of counterfeit bills. In the garage they found equipment used to make the counterfeit money as well as more finished counterfeit bills. The captured counterfeit bills had a face value of over $29,000.

Bolin and Barragree were indicted for counterfeiting obligations of the United States, in violation of 18 U.S.C. § 471, and possessing counterfeit obligations, in violation of 18 U.S.C. § 472. Barragree pled guilty to both counts. Bolin was tried before a jury. After their arrest, but before the trial, Barragree and Bolin married.

Bolin called Barragree to testify in her case. He claimed that Bolin had not participated in the scheme, and that she had never even held the counterfeit bills in her hands.

The jury convicted Bolin of possessing counterfeit obligations, but acquitted her of manufacturing them.

When the district court sentenced Bolin it added three levels to her base offense level for possessing between $10,000 and $20,000 of counterfeit funds, as provided for by U.S.S.G. §§ 1B1.3 and 2F1.1(b)(1)(D), and subtracted two levels because she was a "minor participant" under U.S.S.G. § 3B1.2(b).

Bolin objected to both of these adjustments. She argued that it was an error to find that she had possession of over $10,000 in counterfeit money. She argued further that she was entitled to a four level reduction, as a minimal participant rather than two

---

* The Honorable James M. Sprouse, Circuit Judge for the Fourth Circuit, is sitting by designation.

levels for being a minor participant. Bolin also argued that she should receive a downward departure because she was the mother of two children who needed her care.

The district court rejected these arguments. It found that Bolin knew about and had power to exercise control over at least $12,000 worth of counterfeit bills. It found that she was precluded from claiming to be a minimal participant because she had committed more than a single act in the overall scheme. Finally, the district court declined to depart downward from the guideline range, finding that the guidelines specifically state that family relationships are not a basis for a downward departure.

The district court sentenced Bolin to eight months imprisonment, four months in a correctional facility and then four months of home confinement. Bolin filed a timely notice of appeal.

■ Bolin argues on appeal, as she did in the district court, that it was error to give the cautionary jury instruction regarding Barragree's testimony. The district court instructed the jury as follows:

> The witness, Brian Barragree, has pleaded guilty to a crime arising out of the same occurrence for which the defendant is now on trial. You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care. Moreover, his guilty plea is not to be considered as evidence against the defendant.

This language comes from the pattern instruction entitled **3.23 WITNESS WHO HAS PLEADED GUILTY** in the booklet **Federal Criminal Jury Instructions of the Seventh Circuit**, 45 (1980). Bolin does not argue that the jury instruction deviates from the Seventh Circuit's pattern jury instruction. Rather, she argues that it should only be used when a witness who has pled guilty testifies against a defendant.

However, the committee comments to the pattern instruction specifically stated that the instruction is proper in cases where testimony is *exculpatory* of the defendant as well. The Committee "suggested" that the phrase "caution and great care" is "adequate whether the testimony is inculpatory or exculpatory of the defendant on trial." **Committee Comment** to instruction **3.23,** *Id.*

In *United States v. Cool,* 461 F.2d 521 (7th Cir.1972), *rev'd on other grounds, Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972), three persons were arrested for counterfeiting. One, named Voyles, pled guilty. The other two, the Cools, proceeded to trial. Voyles testified on their behalf, saying they knew nothing about the counterfeiting. *Id.* 521–24. The district court gave the jury an "accomplice" instruction even more strongly phrased than the one used in this case.[1] The Cools argued that the instruction should only be used when the accomplice is a witness for the government.

We rejected this argument in *Cool,* citing *United States v. Nolte,* 440 F.2d 1124, 1126–27 (5th Cir.1971), *cert. denied,* 404 U.S. 862, 92 S.Ct. 49, 30 L.Ed.2d 106 (1971) stating that *Nolte* "reasons persuasively that the better practice is to give the instruction regardless of the party calling the witness." The *Nolte* court noted that when an accomplice testifies it is proper to "alert the jury to the possibility of perjured testimony" and that testifying when for the defendant an accomplice may try to aid his former colleague by "swear[ing him] out of the charge."

There is sound reason for a jury to examine closely the testimony of a former accomplice because his credibility is suspect, no matter which side has called him to testify or whether his testimony is exculpatory or inculpatory. The rationale for the accomplice instruction remains unchanged, and we have not altered our position on the matter since *Cool.* The district court made no error in giving the jury instruction regarding Barragree's testimony.

1. The instruction in the *Cool* case read in part: It is a general principle that in considering the credibility of an accomplice that his testimony is open to suspicion for it may be actuated by self-interest, hostility, bias, hope of reward or other motivation, and his testimony should be carefully weighed and tested before giving it unlimited credence.

Bolin also argues that we must overturn the verdict against her because there was insufficient evidence to support her conviction. To prevail on this claim Bolin must demonstrate that "the record contains *no* evidence, regardless of how it is weighed, from which [the trier of fact] could find guilt beyond a reasonable doubt." This is a "heavy burden." *United States v. Campbell,* 985 F.2d 341, 344 (7th Cir.1993). It is a burden the record will not bear.

■ In *United States v. Tucker,* 820 F.2d 234, 236 (7th Cir.1987) we set out the three elements required to convict a defendant for possession of counterfeit obligations of the United States. The government must prove (1) that the defendant possessed the counterfeit obligations, (2) that she knew they were forged, and (3) that she acted with intent to defraud. Bolin does not dispute the second and third elements. She relies instead on a claim that there was insufficient evidence to demonstrate that she ever possessed the counterfeit bills.

■ Eller testified that Bolin gave him some counterfeit bills. This is evidence of possession. Even without this evidence of actual possession, there was overwhelming evidence of constructive possession. We recently set out the rule for constructive possession in *United States v. Hernandez,* 13 F.3d 248, 252 (7th Cir.1994). Constructive possession is established by evidence demonstrating "ownership, dominion or control." The government must show that defendant had "ability to exercise control over the [illegal material] or the power to possess it." Also the defendant must not be a mere bystander. The government must show some "nexus between the accused and the contraband." *Id.* *See also United States v. Galif-*

*fa,* 734 F.2d 306, 308 (7th Cir.1984) (constructive possession exists when the defendant has ownership or control of contraband itself or of the premises in which it is concealed).

The record contained (1) recorded conversations in which Bolin referred to "we" and "us" making the counterfeit bills, (2) Eller's testimony about the uncut sheets of counterfeit bills drying in plain view in the home Bolin shared with Barragree, and (3) the large quantity of the forged bills and materials found in the house when the police searched it at the time of her arrest. All of this evidence supports a finding of constructive possession. Bolin's argument that there was insufficient evidence to convict her fails.

■ With regard to the sentence imposed, Bolin claims that the district court erred in attributing at least $12,000 face value of counterfeit money to her. This finding led to a three level increase in Bolin's adjusted offense level for relevant conduct under U.S.S.G. §§ 1B1.3 and 2F1.1(a)(1)(D).[2] The district court's factual findings regarding relevant conduct for sentencing purposes will be upheld unless clearly erroneous. *United States v. Vopravil,* 891 F.2d 155, 157 (7th Cir.1989).

■ Bolin argues that she committed no affirmative act which would make her responsible for the forged bills. But, as we have discussed above, there is evidence that she participated in the manufacture of the counterfeit bills and in the scheme to distribute them, and that she anticipated making enough bills from the criminal enterprise that she and Barragree could retire. As to the quantity of counterfeit bills attributed to her, Bolin expressly referred to twelve or thirteen thousand dollars which Barragree

---

2. *U.S.S.G.* § 1b1.3 states, in pertinent part:
... the base offense level ... shall be determined on the basis of the following:
(1)(A) all acts and omissions committed, aided, abetted, counseled, ... or willfully caused by the defendant; and
(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.
U.S.S.G. § 2f1.1(b)(1)(D), states in pertinent part:
**Offenses Involving Altered or Counterfeit Instruments** ...
(B) Specific Offense Characteristics
(1) If the loss exceeded ...
(D) More than $10,000 ... add **3** [levels].

had printed. There was no error in the district court imposing a three level adjustment for relevant conduct.

■ Bolin also argues that she was entitled to a four level reduction as a minimal participant, under U.S.S.G. § 3B1.2. A denial of a downward adjustment under § 3B1.2 will be reversed only if clearly erroneous. *United States v. Boyer,* 931 F.2d 1201, 1205 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991). The commentary for § 3B1.2 indicates that the downward adjustment is to be reserved for those defendants who are "substantially less culpable than the average participant."

■ In *United States v. Osborne,* 931 F.2d 1139, 1159 (7th Cir.1991) we upheld the denial of the downward adjustment for a participant in a drug conspiracy whom we found to have been less culpable than the other participants, but who had nonetheless played "an integral role" in the criminal enterprise. Bolin fits into this category. It appears that Barragree was the driving force in the counterfeiting scheme, but Bolin had an integral role assisting him in the manufacture and distribution of the forged bills. There was no error in denying the downward adjustment.

■ Finally, Bolin argues that she should have received a downward departure in her sentence because she has two children who need her care. The guidelines allow but do not require a departure below the otherwise applicable range. *United States v. Poff,* 926 F.2d 588, 590 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991). When the district court does not choose to depart below the applicable range, the court of appeals does not have jurisdiction to review that decision. *Id.* at 591. As we lack jurisdiction over the issue, we need analyze it no further.

The conviction and sentence of Debra K. Bolin are AFFIRMED.