**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Odis Warren NOLTE, Defendant-
Appellant.**
**Nos. 27352, 30223.**

United States Court of Appeals,
Fifth Circuit.

March 30, 1971.

David J. Nagle, Will Gray, Houston,
Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Malcolm R. Dimmitt, James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee; Ronald J. Blask, Atty., Dept. of Justice, Washington, D. C., of counsel.

Before GOLDBERG and DYER, Circuit Judges, and GROOMS, District Judge.

DYER, Circuit Judge:

Nolte was tried before a jury on a four-count indictment alleging that he received money stolen from the Pasadena National Bank, from the Lumbermen's National Bank of Houston, and, on two occasions, from the Industrial State Bank in violation of 18 U.S.C.A. § 2113(c). He appeals from a judgment entered upon a conviction on the single count of having received stolen funds from the Lumbermen's National Bank.[1] We affirm.

While Nolte was acquitted on the three counts pertaining to the Pasadena National Bank and the Industrial State Bank, it becomes necessary to briefly recount the evidence adduced concerning all of the counts in view of Nolte's argument that the trial court erred in instructing the jury that defense witness William Atkins was Nolte's accomplice.

After Rudy Homan was arrested for burglarizing the Pasadena National Bank, he engaged Nolte, an attorney, to arrange for his release on bail. Since Homan was unable to raise the necessary amount of cash for Nolte's services, it was agreed that Nolte would hold Homan's motorcycle as security for the balance owed.

There was evidence, although conflicting, that shortly after Homan and Atkins burglarized the Industrial State Bank, they redeemed the motorcycle by giving Nolte a sack containing approximately one thousand dollars in coins stolen from the bank, and that in Atkins' and Homan's presence, he counted the coins, all of which were still secured in bank wrappers labeled "Industrial State Bank."

Additional evidence linked Atkins to Nolte in the crimes charged in the indictment. After Atkins learned that Nolte desired to sell his old car and a set of tires, Atkins, accompanied by Homan, delivered six hundred dollars to Nolte in exchange for the car and tires. Homan testified that the payment consisted of Atkins' share of stolen coins.

Several days before the Lumbermen's National Bank burglary, Homan informed Nolte that Jean Copeland, Homan's girl friend, had been arrested, presumably in connection with Homan's burglary of a savings and loan association. He requested Nolte to arrange for Copeland's release from custody as soon as possible. Nolte replied that "it would take some money." Unable to raise the necessary cash for Nolte's services and to meet Copeland's bond, Homan called Nolte and told him that he "was going to have to make a bank." Nolte and Homan agreed to meet at the Flamingo Motel the next morning. In the meantime, Homan and Atkins burglarized the Lumbermen's National Bank and managed to steal approximately fourteen thousand dollars.

During the burglary Homan severely cut his arm on broken glass. Since he was bleeding profusely, Atkins drove him to the Twin W Motel and then fetched Homan's sister Charlotte Squires to attend to Homan's wounds. After Atkins returned with Squires, Homan told her that part of the loot was for Nolte, and that Atkins would understand since Nolte needed the money. Homan and Squires drove Atkins home; they then met Nolte at the Flamingo Motel.

---

1. After Nolte's first appeal was perfected, we remanded this case for the limited purpose of permitting the trial court to hold an evidentiary hearing on Nolte's motion for a new trial under Rule 33, Fed.R.Crim.P. United States v. Nolte, 5 Cir. 1969, [No. 27,352, Nov. 12, 1969]. Nolte's appeal from the denial of his motion for a new trial was thereupon consolidated with his first appeal.

With Homan and Squires present in the motel room, Homan emptied the contents of a pillowcase containing some of the stolen money on the bed. Most of the currency was secured by bank wrappers bearing the distinctive emblem of the Lumbermen's National Bank. After the group counted the loot, Nolte said that he would take care of the money and pay it back on demand, except for two thousand dollars for Copeland's bail and two thousand dollars for attorney's fees. Having instructed Squires to remove the bank wrappers, he then stacked the money in his briefcase. Shortly thereafter the group disbanded and left the motel.

 Nolte's argument that the trial court erred in instructing the jury that defense witness Atkins was "in the category of an accomplice" is without merit. A witness is an accomplice if he could have been indicted either as a principal or an accessory in the offense for which the defendant on trial is charged. Phelps v. United States, 5 Cir. 1958, 252 F.2d 49, 52; Risinger v. United States, 5 Cir. 1956, 236 F.2d 96, 99; see 18 U.S.C.A. §§ 2, 3. Atkins could have been indicted for receiving money stolen from the Industrial State Bank— the same offense for which Nolte was charged.

 Nolte next contends that even if Atkins was an accomplice, the trial court erred in instructing the jury that an accomplice's "testimony should not be received by the jury as that of an ordinary witness, but ought to be received as suspicious and with the greatest care and caution." Nolte relies on Washington v. Texas, 1967, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, to support his argument that the instruction given violated his Sixth Amendment right to offer the testimony of witnesses in his favor. But *Washington* was not concerned with jury instructions. It held unconstitu-

tional a Texas statute which prohibited an accomplice from taking the stand in behalf of the defendant. While a defendant has the right to have an accomplice testify in his behalf, it is the better practice, although not required, for courts to give a cautionary instruction concerning the testimony of an accomplice. Caminetti v. United States, 1917, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442; Holmgren v. United States, 1910, 217 U.S. 509, 524, 30 S.Ct. 588, 54 L.Ed. 861. The policy behind the practice is obvious: to alert the jury to the possibility of perjured testimony. When an accomplice testifies for the prosecution he may have an interest in prevaricating in favor of the prosecution to obtain favors or even immunity. Washington v. Texas, *supra*, 388 U.S. at 22–23, 87 S.Ct. 1920. On the other hand, when one accomplice testifies for another, there is always the chance that each will try to "swear the other out of the charge." *Id.* at 21, 87 S.Ct. at 1924.

 Nolte insists, however, that the instruction may only be given when an accomplice testifies for the prosecution, and not when he testifies in behalf of the defendant. We disagree. It is clear that an accomplice's credibility may be suspect, regardless of whether he testifies for the prosecution or the defense.[2] Moreover, the trial judge's decision whether to give the instruction is not a matter requiring constitutional scrutiny. At most, it is "merely a part of the general conduct of the trial, over which the judge's powers are discretionary, like his control over cross-examination, or his comments on the evidence." United States v. Becker, 2 Cir. 1933, 62 F.2d 1007, 1009; *accord,* Lyles v. United States, 5 Cir. 1957, 249 F.2d 744, 746, cert. denied, 1958, 356 U.S. 931, 78 S.Ct. 773, 2 L.Ed.2d 761. Whether an accomplice testifies for the prosecution or, as here, for the defense, it is within the trial judge's discretion to instruct the

---

2. Atkins can hardly be viewed as a totally disinterested witness. For example, he conceded on cross-examination that Nolte had represented him previously with re-spect to three other bank burglaries, and that he still "owed the man" for his legal services.

jury to accept an accomplice's testimony with caution. The instruction in the instant case is almost identical to cautionary instructions previously approved by this Court. *See, e. g.,* Ward v. United States, 5 Cir. 1961, 296 F.2d 898, 910. We find no error in this portion of the charge.

 Nolte next points out the prosecutor's remark made during defense counsel's cross-examination of government witness Applewhite:

> I am going to object to Mr. Nagle's arguing with Mr. Applewhite. *I think he would answer anything honestly and fairly.* (Emphasis added.)

Nolte asserts that the remark, made without objection, resulted in plain error under Rule 52(b), Fed.R.Crim.P. There can be no hard and fast basis for application of the rule, Dupoint v. United States, 5 Cir. 1967, 388 F.2d 39, 45, since the determination whether plain error exists must be made upon the facts of the particular case. Sykes v. United States, 5 Cir. 1966, 373 F.2d 607, cert. denied, 1967, 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138. We doubt that the prosecutor's remark prejudiced Nolte. While it may have been objectionable, the remark did not result in plain error. The plain error rule is invoked only in exceptional circumstances to avoid a clear miscarriage of justice, Eaton v. United States, 5 Cir. 1968, 398 F.2d 485, 486, cert. denied, 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273; Mims v. United States, 5 Cir. 1967, 375 F.2d 135, 147, or where the fairness or integrity of the judicial proceedings is seriously affected. United States v. Atkinson, 1936, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555.

 We now turn to Nolte's appeal (consolidated) from the denial of his motion for a new trial under Rule 33, Fed.R.Crim.P., based on newly discovered evidence that Homan had given false testimony at the trial. By agreement of the parties, Homan's deposition, taken at the Marion, Illinois Penitentiary where he was serving sentence for bank burglary convictions, was offered in lieu of his oral testimony.

On deposition Homan recanted his trial testimony with respect to telling Nolte that the only way he could raise Copeland's bail and Nolte's attorney's fees was to "make a bank," "to make a score." Homan's later version of their conversation is that he told Nolte he would either resort to savings, borrow the money, or sell some personal property. Homan further stated that his testimony that the money wrappers were stamped with the bank's emblem was false; that the wrappers were merely of various colors according to currency denomination. Finally, Homan recanted his testimony that he told Nolte about his "illegal activities" and that he told Nolte that the money was "bank money." He claims that his perjured testimony was motivated by a desire for revenge against Nolte for encouraging him to plead guilty to a previous bank burglary charge and by a desire to travel to Houston in the hope of receiving medical attention for his drug addiction.

Homan's recantation was thoroughly impeached by three government witnesses at the hearing. Charlotte Squires reaffirmed her previous trial testimony, which is inconsistent with Homan's recantation. She further testified that about eight months after Nolte's conviction, she visited Homan to ask him why he was changing his story. He told her Nolte had promised him that Nolte would give him an affidavit stating that he had not represented Homan properly in advising him to plead guilty to two bank burglaries.

S. G. Kolius, an attorney who had represented Homan by court appointment at the time of Nolte's trial, testified that he had received a letter from Homan stating, "I have decided to help Nolte in any way I can." . F.B.I. Agent Claude Grace testified that in an interview with Homan after Nolte's conviction, Homan told Grace that Nolte had visited him in the Terre Haute Penitentiary five days after Homan testified at the trial. During this visit Nolte promised Homan a

piece of property and a house if he would give a statement indicating that Nolte was not aware of the source of the money. Homan also told Grace that he had twice received money from a Pasadena, Texas, address—apparently from Nolte's Pasadena office.

While we agree with the general principle in Mesarosh v. United States, 1956, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1, relied on by Nolte, that "[t]he dignity of the United States Government will not permit the conviction of any person on tainted testimony," the Supreme Court took pains to point out:

> It must be remembered that we are not dealing here with a motion for a new trial initiated by the defense, under Rule 33 of the Federal Rules of Criminal Procedure, presenting untruthful statements by a Government witness subsequent to the trial as newly discovered evidence affecting his credibility at the trial. Such an allegation by the defense ordinarily will not support a motion for a new trial, because new evidence which is "merely cumulative or impeaching" is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial.

*Id.* (footnote omitted).

Motions for a new trial based on recanted testimony of a material witness are looked upon with the utmost suspicion. Batsell v. United States, 8 Cir. 1968, 403 F.2d 395, 403, cert. denied, 1969, 393 U.S. 1094, 89 S.Ct. 865, 21 L. Ed.2d 785; Newman v. United States, 5 Cir. 1956, 238 F.2d 861, 862 n. 1. We agree with the lower court's findings that the circumstances surrounding Homan's recantation renders it particularly suspect. The evidence impeaching Homan was overwhelming and fully supports the conclusion that he failed to demonstrate that his trial testimony was false. Accordingly, we find no abuse of discretion in the denial of the motion for a new trial. United States v. Johnson, 1946, 327 U.S. 106, 111, 66 S.Ct. 464, 90 L.Ed. 562; United States v. Hersh, 5 Cir. 1969, 415 F.2d 835, 837–

838; Batsell v. United States, *supra,* 403 F.2d at 403; Reno v. United States, 5 Cir. 1965, 340 F.2d 307, 308; Newman v. United States, *supra,* 238 F.2d at 862–863; Harrison v. United States, 5 Cir. 1951, 191 F.2d 874, 876; *see* Weiss v. United States, 5 Cir. 1941, 122 F.2d 675, 692, cert. denied, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550.

Nolte's other points on appeal have been considered and are without merit.

Affirmed.