**Raymond Lee BOOKER, Petitioner,**

v.

**Thomas R. ISRAEL, Respondent.**

No. 82–C–294.

United States District Court,
E.D. Wisconsin.

May 29, 1985.

William S. Mautner, Milwaukee, Wis., for petitioner.

Sally L. Wellman, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

Raymond Lee Booker, the petitioner, originally filed his habeas corpus petition on March 15, 1982. On July 7, 1983, I dismissed the petition in its entirety and without prejudice because Mr. Booker had failed to exhaust his state remedies with regard to one of the claims in his petition. 566 F.Supp. 868. He subsequently exhausted his state remedies as to this claim and, thereafter, filed a motion for reconsideration of my July 7, 1983, order. By an order dated December 14, 1984, I vacated my July 7, 1983, order of dismissal, thereby reinstating Mr. Booker's habeas corpus petition.

The petitioner was convicted in state court of armed robbery, party to a crime; concealing identity; and habitual criminality. His motions for a new trial and modification of sentence were denied by the trial court. The Wisconsin court of appeals affirmed the judgment of conviction and the order denying the postconviction motions. A petition for review filed with the Wisconsin Supreme Court was denied insofar as it related to the claims presently at issue.

Mr. Booker's petition for habeas corpus relief contains six claims. In his briefs in support of the petition, however, he argues only four of these claims. The petitioner asserts that:

(1) the bailiff's submission of an instruction to the jury during deliberations at the direction of the trial judge, in the absence of the petitioner, his counsel, and the trial judge, and off the record, infringed his constitutional rights to counsel, due process, and presence at all critical stages of the trial;

(2) the trial court's refusal to strike juror Jacqueline Lewis for cause violated his sixth amendment right to an impartial jury and due process right to a fair trial;

(3) the trial court's exclusion of the testimony of defense witness Paul Moore infringed his sixth amendment right to compulsory process and due process right to a fair trial; and

(4) the trial court's instruction to the jury concerning accomplice testimony violated his constitutional right to present evidence and call witnesses in his own behalf.

## INSTRUCTION DURING JURY DELIBERATIONS

During the jury deliberations, on February 21, 1980, the jury foreperson presented one of the bailiffs with a written request for reinstruction on the burden of proof. In response to the request, the trial judge directed the bailiff to give the jury a copy of the burden of proof instruction that had been read to them earlier in open court. Neither the prosecutor, defense counsel, nor the petitioner were informed of the jury's request or consulted regarding the judge's response. The exchange between the bailiff and the judge was not placed on the record, nor was the burden of proof instruction submitted to the jury made a part of the record.

Defense counsel subsequently learned of the incident and, following the return of the guilty verdict, brought the matter to the court's attention. The following exchange then occurred:

Ms. Levine [Defense counsel]: And I'd also ask to be put on the record that there was at some point a request for additional instructions from the jurors during the deliberations.

The Court: Yes, there was a request called in for burden of proof. The court had the burden of proof instruction that was read to them sent in.

R. 411. The trial court offered the defense counsel an opportunity to make a record and question the bailiffs concerning the jury's query. Defense counsel, however, did not question the bailiff about the jury's request for reinstruction. Nor did she attempt to obtain a copy of the burden of proof instruction given to the jury or attempt to question the jurors regarding the reinstruction that they received.

Following the trial, the petitioner filed a motion in the trial court for postconviction relief challenging, *inter alia*, the propriety

of the trial court's submission of the burden of proof instruction to the jury during its deliberations. Over nine months later, on December 3, 1980, a hearing on the postconviction motion was held. At the hearing, defense counsel questioned the bailiff who had been involved in the reinstruction of the jury. He could not specifically recall the case nor could he clearly remember whether he gave the jurors the burden of proof instruction. He did testify, however, that if the court had directed him to submit a typed copy of the instruction to the jury, he would have done so and would not have embellished it or offered his personal opinion of the instruction or the case. No other record on this issue was made at the postconviction hearing.

The petitioner contends that the trial court's submission of a supplementary instruction to the jury in the absence of counsel and the petitioner, and without proceeding in open court, violated his sixth and fourteenth amendment rights to counsel, to be present at all critical stages of the trial, and to due process. It would have been better practice for the trial judge to have notified counsel of the jury's request for reinstruction and to have given them an opportunity to be heard, on the record. *See Shields v. United States*, 273 U.S. 583, 588–89, 47 S.Ct. 478, 479, 71 L.Ed. 787 (1927). *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 81, 39 S.Ct. 435, 436, 63 L.Ed. 853 (1919). The Supreme Court has observed that an *ex parte* communication between the court and a deliberating jury "is pregnant with possibilities for error." *United States v. United States Gypsum Co.*, 438 U.S. 422, 460, 98 S.Ct. 2864, 2885, 57 L.Ed.2d 854 (1978). The question for this court, however, is not whether the trial court followed the better practice but whether the action of the trial court amounts to constitutional error.

■ In a recent decision, *United States v. Gagnon*, ⸺ U.S. ⸺, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985), the Supreme Court stated:

" '[T]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.' "

Quoting *Rushen v. Spain*, 464 U.S. 114, 125–26, 104 S.Ct. 453, 459, 78 L.Ed.2d 267 (1983) (Stevens, J., concurring in judgment). A defendant has a constitutional right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge ... [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder v. Massachusetts*, 291 U.S. 97, 105–106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934).

■ In the present case, there is no evidence that the petitioner's constitutional rights were thwarted by the trial court's failure to inform the petitioner and counsel of the jury's request. The Wisconsin court of appeals found that there was no indication that the jurors received anything except a copy of the burden of proof instruction that the trial court had previously read to them. The petitioner makes no claim that this instruction was constitutionally infirm. The state court's factual findings concerning the substance of the communications between the trial judge, the bailiff, and the jury regarding the requested reinstruction are findings of fact entitled to a presumption of correctness. *See, Rushen, supra*, 104 S.Ct. at 456; *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); 28 U.S.C. § 2254(d). These findings must be deferred to by the federal courts in the absence of "convincing evidence" to the contrary. *Rushen supra*, 104 S.Ct. at 456; *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983).

The petitioner in this case has offered no evidence to contradict the state court's finding. Relying on the bailiff's failed memory at the December 3, 1980, postconviction hearing, the petitioner merely speculates that the bailiff may have given the

jury something other than the written burden of proof instruction. Such speculation cannot support the petitioner's constitutional challenge.

■ Defense counsel had an ample opportunity to question the bailiff on February 21, 1980, immediately after the verdict was returned, but did not do so. Neither did she attempt to obtain and preserve a copy of the instructions given to the jury by the bailiff. Nor did she attempt to voir dire the jury as to the substance of the reinstruction they received. Defense counsel only questioned the bailiff some nine months later at the postconviction hearing, when his memory of the reinstruction incident was understandably dim. The burden is not on the state to show that no constitutional right has been violated but on the petitioner to demonstrate that he has been deprived of a constitutional right. *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 1607, 36 L.Ed.2d 235 (1973).

■ There being no evidence that during their deliberations the jury received anything but a copy of the burden of proof instruction previously read to them by the trial judge in open court, the petitioner's challenge must stand on the claim that the court's *ex parte* submission of this instruction was unconstitutional. In this case, however, the presence of the petitioner and his trial counsel was not required to ensure fundamental fairness or a " 'reasonably substantial ... opportunity to defend against the charge,' " *Snyder, supra,* 291 U.S. at 105, 54 S.Ct. at 332, *quoted in Gagnon, supra,* 105 S.Ct. at 1484, before the trial court had the bailiff transmit the burden of proof instruction to the jury. The jury received in written form only what had previously been read to them in open court. The petitioner and his counsel were present when the burden of proof charge was originally read and had an opportunity to object to it but did not do so.

The major federal cases cited by the petitioner in support of his claim are distinguishable from the present case. These cases involved the exercise of supervisory power over lower federal courts and did not address the issue of *ex parte* communi-

cations between the trial judge and the jury in constitutional terms. *See, e.g., United States Gypsum Co., supra,* 438 U.S. at 422, 98 S.Ct. at 2864; *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Shields, supra,* 273 U.S. at 583, 47 S.Ct. at 478; *Fillippon, supra,* 250 U.S. at 76, 39 S.Ct. at 435; *United States v. Burns,* 683 F.2d 1056 (7th Cir. 1982), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 821, 74 L.Ed.2d 1018 (1983); *United States v. Dellinger,* 472 F.2d 340 (7th Cir.1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); *United States v. Glick,* 463 F.2d 491 (2d Cir.1972).

The present case is also clearly distinguishable from *Owen v. Duckworth,* 727 F.2d 643 (7th Cir.1984). In *Owen,* the court held that the petitioner was denied his constitutional right to an impartial jury as the result of a threat made to one juror and communicated to several other members of the jury by that juror. In reaching its holding, the court declared that once a defendant establishes that there was such an outside contact, the jury is deemed "presumptively prejudiced." *Owen, supra,* 727 F.2d at 646. In *Owen,* the petitioner was able to establish the content of the third party contact. In contrast to the present case, the contact, a threat on the life of a juror, was by its very nature prejudicial. *See also United States v. Bruscino,* 662 F.2d 450 (7th Cir.1981), *cert. denied,* 459 U.S. 1228, 103 S.Ct. 1235, 75 L.Ed.2d 468 (1983).

■ The petitioner does cite one case, *Arrington v. Robertson,* 114 F.2d 821 (3d Cir.1940), where the court held that the action of the trial judge in sending instructions to the jury in the absence of the defendant or his counsel and without giving them notice and an opportunity to be present constituted a denial of due process. In reaching its holding, the court found the nature or propriety of the instructions given to be immaterial. *Id.* at 822. The *Arrington* court based its holding primarily on *Fillippon, supra,* and *Shields, supra.* As noted earlier, however, both *Fillippon* and *Shields* were not decided on constitu-

tional grounds but on the Court's supervisory power over lower federal courts. I do not accept the view that *any ex parte* communication of an instruction by a judge to a jury, irrespective of its content, constitutes a deprivation of the defendant's right to due process. The content of the communication must be considered in determining whether the defendant was denied a fair and just hearing. *See Gagnon supra*, 105 S.Ct. at 1484; *Snyder, supra*, 291 U.S. at 105–106, 54 S.Ct. at 332.

## REFUSAL TO STRIKE JUROR FOR CAUSE

The petitioner next claims that the trial court's refusal to strike jury Jacqueline Lewis for cause violated his sixth amendment right to an impartial jury and his due process right to a fair trial.

The jury trial of the petitioner was held on Wednesday and Thursday, February 20 and 21, 1980. During voir dire, Jacqueline Lewis, a prospective juror, asked the court whether the trial would extend into Friday. The court informed her that it was very unlikely the trial would last that long. Subsequently, when defense counsel was conducting her own voir dire, Ms. Lewis indicated that she would not be available for deliberation on Friday because she bowled on that day. She also expressed the hope that the trial and jury deliberations would conclude prior to 11:00 P.M. on Thursday. At the conclusion of the voir dire, defense counsel moved to strike Ms. Lewis for cause due to her unavailability or unwillingness to deliberate beyond Thursday evening. The motion was denied.

Ms. Lewis ultimately became the forewoman of the jury, which received the case for deliberation shortly after 5:00 P.M. on Thursday. During the jury's deliberations, Ms. Lewis indicated to one of the bailiffs that she had an 11:00 P.M. bus to catch. At approximately 10:45 P.M. Thursday evening, the jury returned a guilty verdict against the petitioner. The petitioner's motion for a mistrial based on Ms. Lewis' communication concerning her bus was denied.

■ The decision to strike a juror for cause is within the trial court's discretion and, in a federal habeas corpus proceeding, the trial court's decision only provides a basis for relief if it was so prejudicial as to violate due process. *Snyder v. Coiner*, 510 F.2d 224, 230 (4th Cir.1975). In *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982), the Supreme Court explained the relationship between due process and an allegation of juror bias:

"[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."

The state court's factual findings with respect to the alleged prejudice are deemed presumptively correct under 28 U.S.C. § 2254(d). *Id.* at 218, 102 S.Ct. at 946.

The petitioner had an opportunity to demonstrate prejudice during voir dire, immediately after the verdict was rendered, and at the postconviction hearing but was unable to do so. At the hearing on the motion for postconviction relief, the trial court found that there had been no showing that juror Lewis did not deliberate properly according to her oath. On appeal, the Wisconsin court of appeals held that the trial court did not abuse its discretion in refusing to strike juror Lewis for cause. The petitioner has failed to establish an adequate basis for rejecting the findings of the state courts.

■ The petitioner's claim of jury bias rests solely on Ms. Lewis' statement during voir dire that she would not be available on Friday because of her bowling schedule

and on her statement to one of the bailiffs during deliberations that she had an 11:00 P.M. bus to catch. Based on these statements, and the fact that the jury returned its guilty verdict only fifteen minutes before Ms. Lewis' 11:00 P.M. bus, the petitioner concludes that one or more of the jurors probably did not reach their decision impartially, based solely on the evidence before them, but were prejudiced as a result of Ms. Lewis' time constraints.

At most, the petitioner has shown a possibility of prejudice based wholly on speculation as to the impact on the jury's deliberations of Ms. Lewis' statements. The petitioner's speculation is not sufficient to establish a violation of his constitutional right to a fair and impartial jury. *See Mares v. United States*, 383 F.2d 811, 812 (10th Cir.1967), *cert. denied*, 390 U.S. 961, 88 S.Ct. 1060, 19 L.Ed.2d 1157 (1968).

The petitioner did not question juror Lewis about her ability to deliberate as long as necessary despite her bowling plans. Nor did he ask the court to do so. Furthermore, the petitioner did not even attempt to demonstrate that Mrs. Lewis or any of the other jurors were unable to decide the case fairly and impartially, irrespective of Ms. Lewis' schedule.

Finally, the timing of the guilty verdict hardly indicates jury bias. The petitioner's case was a relatively short and straightforward one. The evidence was not particularly complicated and was presented in just two days. It is completely reasonable to expect that the jury had an ample opportunity to fully and impartially consider the evidence in the case during its several hours of deliberations. In sum, the petitioner has failed to show that the jury which tried the case was anything but fair and impartial.

## DISQUALIFICATION OF DEFENSE WITNESS

During the presentation of his case, the petitioner called Paul Moore, a public defender investigator, as a witness. The trial court immediately recognized that Mr. Moore had been present in the courtroom during the testimony of codefendant David Gaskins. The trial court had previously ordered all witnesses sequestered, at the petitioner's request.

Defense counsel stated that she had been unaware that Mr. Moore had entered the courtroom. She then made an offer of proof during which Mr. Moore stated that he had been in the courtroom during part of the direct examination and all of the cross-examination of Mr. Gaskins. Mr. Moore did not explain why he had remained in the courtroom during Mr. Gaskins' testimony. Mr. Moore also stated that, if permitted, he would testify about his interview with Elbert Williams, a cab driver who had called the police to apprehend the armed robbery suspects. The testimony would have been offered to impeach the testimony Mr. Williams had given earlier at trial. Williams testified that he had been at the scene of the robbery when the police arrived and had overheard descriptions of the two robbers given by eyewitnesses. He further testified that later that same morning he was at a diner where he saw the petitioner and Mr. Gaskins. He testified that because he suspected that these men fit the descriptions he had heard earlier that morning, he called the police.

The trial court ruled that Mr. Moore was in violation of the sequestration order and barred his testimony. The court observed that the defense had requested witness sequestration and had an obligation to monitor its witnesses. The trial court also emphasized that Mr. Moore, as a public defender investigator, was not a novice in the courtroom. Following the offer of proof, the court concluded that Mr. Moore's testimony, had it been admitted, was not directly relevant to the issues at trial but was offered for impeachment purposes only.

■ The Wisconsin court of appeals reiterated the factual findings of the trial court and concluded that violation of the sequestration order was prejudicial to the state because Mr. Moore's proffered testimony was related to Mr. Gaskins' testimony, which in part related to the circumstances of Mr. Gaskins' apprehension at the diner and his contact with Mr. Williams.

The state appellate court also found that Mr. Moore's testimony constituted impeachment on a collateral matter. The factual findings of the state courts are presumptively correct under 28 U.S.C. § 2254(d) and must be deferred to unless the federal court finds that the state court findings lacked even "fair support" in the record. *Marshall v. Lonberger, supra,* 459 U.S. at 432, 103 S.Ct. at 849.

 The decision to exclude the testimony of a witness who has violated a sequestration order is a matter within the sound discretion of the trial court. *See United States ex rel. Clark v. Fike,* 538 F.2d 750, 757 (7th Cir.1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977). Questions concerning the admissibility of evidence are determined by state law and are not reviewable in a federal habeas corpus action unless the petitioner was denied fundamental fairness by the state court's evidentiary ruling. *Id.* at 757.

 In the present case, the trial court's order was not arbitrary but was based on the witness' clear violation of the sequestration order and on the nature of the testimony. The Moore testimony was not vital to proving the petitioner's guilt or innocence but was directed solely to the impeachment of the Williams testimony, which itself was neither directly inculpatory nor exculpatory. *See United States v. Nash,* 649 F.2d 369, 371 (5th Cir.1981).

The petitioner has failed to establish that the trial court's exclusion of the Moore testimony for violation of the sequestration order was fundamentally unfair so as to be constitutional error. Accordingly, this claim cannot support the issuance of a writ of habeas corpus.

## ACCOMPLICE TESTIMONY INSTRUCTION

At trial, the petitioner called as a witness David Gaskins, who had earlier pled guilty and been sentenced for the armed robbery in question. Mr. Gaskins testified that the petitioner was not his accomplice in the robbery.

The trial court gave the following jury instruction regarding Mr. Gaskins' testimony, a modified version of Wis. JI-Criminal 245:

"It is the duty of the jury to scrutinize and weigh the testimony of witnesses and to determine the effect of the evidence as a whole. You are the sole judges of the credibility of the several witnesses and of the weight and credit to be given to their testimony.

"The testimony of one, David Gaskins, has testified and if his testimony is true, he participated in the crime charged against the defendant and is an accomplice therein.

"You are instructed that the evidence of an accomplice is competent evidence in a criminal case providing it is of such a character, taken in connection with all the other evidence in the case, it rings true. Therefore, you should examine such evidence with the utmost care and caution, scrutinize it closely, and weigh it in the light of all of the attending circumstances as shown by the whole evidence.

"It is the rule that the testimony of an accomplice is to be carefully examined and scrutinized and is to be given only such weight and credit as under all of the circumstances you believe it fairly entitled to receive. If, however, it appears to you to ring true, then you are entitled to believe it and base your findings wholly or partly upon it."

R. 400–401. The petitioner claims that this instruction violated his right to present evidence and call witnesses in his defense because it impermissibly instructed the jury that more scrutiny should be used when reviewing Mr. Gaskins' testimony than that of other witnesses.

 The question for the court in a federal habeas corpus challenge to a jury instruction is " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process,' *Cupp v. Naughten,* 414 U.S. [140], at 147 [94 S.Ct. 396, at 400, 38 L.Ed.2d 368 (1973)], not merely whether 'the instruction is undesirable, erroneous, or even "universally condemned," ' *id.,* at 146 [94 S.Ct., at 400]." *Henderson v.*

**1318**

*Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). In those cases in which the Supreme Court has reviewed jury instructions given in state criminal trials, it has limited its inquiry to deciding whether the jury was correctly instructed on the government's burden of proving each element of the crime beyond a reasonable doubt or other fundamental principles of justice. *See United States ex rel. Swimley v. Nesbitt,* 608 F.2d 1130, 1132–332 (7th Cir.1979) (cases cited therein).

In *Cool v. United States,* 409 U.S. 100, 102, 93 S.Ct. 354, 356, 34 L.Ed.2d 335 (1972), the trial court instructed the jury that " '[i]f the testimony [of the defendant's accomplice] carries conviction and you are convinced it is true *beyond a reasonable doubt,* the jury should give it the same effect as you would to a witness not in any respect implicated in the alleged crime.....' " (Emphasis in original). The Court held that this testimony infringed the defendant's right to present exculpatory evidence in his own behalf and impermissibly reduced the prosecution's burden of proof because it, in effect, required the jury to decide that a defense witness' testimony was true beyond a reasonable doubt before considering that testimony. In reaching this holding, the Court in *Cool* recognized that:

> "[T]here is an essential difference between instructing a jury on the care with which it should scrutinize certain evidence in determining how much weight to accord it and instructing a jury, as the judge did here, that as a predicate to the consideration of certain evidence, it must find it true beyond a reasonable doubt."

*Id.* at 104, 93 S.Ct. at 357. Far from suggesting that accomplice instructions are never permissible, the Court observed that they have long been used, have been repeatedly approved, and, in general, "represent no more than a commonsense recognition that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity." *Id.* at 103, 93 S.Ct. at 357. The Court in *Cool* also cites with approval *United States v. Nolte,* 440 F.2d 1124, 1126–27 (5th Cir.), *cert. denied,* 404 U.S. 862, 92 S.Ct. 49, 30 L.Ed.2d 106 (1971),

wherein the court held that it is within the trial court's discretion to instruct the jury to accept the testimony of an accomplice with caution, whether the accomplice testifies for the prosecution or, as in *Nolte,* for the defendant. In fact, federal courts have long accepted that it is the better practice to give a cautionary instruction concerning the testimony of an accomplice. *See, e.g., Caminetti v. United States,* 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442 (1917); *Swimley, supra,* 608 F.2d at 1134; *United States v. Leonard,* 494 F.2d 955, 960 (D.C. Cir.1974); *Nolte, supra,* 440 F.2d at 1126.

The contested instruction in the present case properly advised the jury to view the testimony of the petitioner's accomplice with caution. The trial court made it clear that the accomplice testimony alone could be sufficient to sustain a guilty or not guilty verdict even if it was unsupported by other testimony.

In contrast to the impermissible instruction in *Cool,* the trial court's instruction herein in no way suggested that the jury must first decide that the Gaskins testimony was true beyond a reasonable doubt before considering it. In addition, the trial court instructed the jury that it was their duty to weigh the testimony of *all* witnesses, not just the testimony of the petitioner's accomplice.

The contested instruction neither shifted nor diminished the prosecution's burden to prove guilty beyond a reasonable doubt. Thus, the trial court did not err in giving the jury a cautionary instruction concerning the testimony of the petitioner's accomplice.

## CONCLUSION

The petitioner has failed to establish that his constitutional rights were violated by the trial court.

Therefore, IT IS ORDERED that the petition for a writ of habeas corpus be and hereby is denied.