[Cite as *State v. McConnell*, 2023-Ohio-654.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. CT2022-0025 |
| JUAN K.E. McCONNELL | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
Pleas, Case No.  CR2022-0155


JUDGMENT:                              Affirmed


DATE OF JUDGMENT ENTRY:       March 3, 2023


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

RON WELCH                                ADAM D. VINCENT
PROSECUTING ATTORNEY          ASSISTANT PUBLIC DEFENDER
JOHN CONNOR DEVER                250 Broad Street
ASSISTANT PROSECUTOR            Suite 1400
27 North Fifth Street, P.O. Box 189   Columbus, Ohio  43215
Zanesville, Ohio  43702

*Wise, J.*

**{¶1}** Defendant-Appellant Juan K.E. McConnell appeals his convictions and sentence entered in the Muskingum County Court of Common Pleas on one count of attempted murder, 23 counts of felonious assault, 23 counts of discharging a firearm into a habitation, and 23 counts of discharging a firearm over a roadway, and attendant firearm specifications, following a jury trial.

**{¶2}** Plaintiff-Appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶3}** The relevant facts and procedural history are as follows:

**{¶4}** On March 17, 2021, a grand jury indicted Juan K.E. McConnell on seventy (70) counts: (Count 1) Attempted Murder, in violation of R.C. §2923.02(A) and R.C. §2903.02(A); (Counts 2-24) Felonious Assault, in violation of R.C. §2903.11(A)(2); (Counts 25-47) Discharging a Firearm Into a Habitation, in violation of R.C. §2923.161(A)(1); and (Counts 48-70) Discharging a Firearm Over a Roadway, in violation of R.C. §2923.162(A)(3). Each count included a firearm specification under R.C. §2941.145.

**{¶5}** Said charges arose from the shooting of Robert Gladden following an argument between Mr. Gladden and Appellant. Police officers recovered twenty-three spent shell casings from the scene.

**{¶6}** Appellant was indicted as a co-defendant with his brother, Jamarr McConnell, and cousin, Terrel McConnell. Jamarr and Terrel were indicted on the same counts as Appellant, but both also faced additional charges. Jamarr and Terrel both

accepted plea deals and received aggregate minimum sentences of twenty (20) years and eleven (11) years, respectively.

{¶7}    Appellant proceeded to trial wherein the jury heard the following testimony:

{¶8}    On the morning of March 1, 2021, after getting off work at 7:00 A.M, Robert Gladden returned to his home at 707 Bates Street in Zanesville, Ohio, where he lives with his wife and five children. (T. at 182-183). Upon arriving home, he found a car parked in front of his house blocking his driveway. (T. at 188). Gladden recognized the car, having seen it before at the home of Gary Workman, who lived just two doors down at 725 Bates Street. *Id.* Gladden testified to enduring years of continuous drug trafficking and prostitution activity occurring out of Workman's home. (T. at 188). He further testified that Workman's home was the most notorious crack-house in Zanesville, that drug abuse instruments from that home were found on his property, and that there was plenty of short-term traffic in-and-out of it. (T. at 186). Even though he had previously tried without success to address the situation by calling the police and by asking the occupants of Workman's home to keep their activities away from his home, he again went to Workman's home to request that something specifically be done about the debris and vehicle. (T. at 187, 190).

{¶9}    Gladden saw Workman on the street and asked him to move the car and clean up some broken pallets that were in the street by Workman's home. (T. at 188-89). Gladden then took his children to school and, upon seeing the car had not been moved when he returned, proceeded to Workman's to ask that the car be moved. (T. at 189). Gladden testified that he was "not nice about it." *Id.* Gladden returned to his home and

waited a short time, but when no one had yet come to move the car, he drove the two doors down to Workman's address and knocked until someone answered. (T. at 190).

**{¶10}** Appellant Juan McConnell answered the door, exiting Workman's trailer to talk with Gladden. (T. at 191). Gladden was angry and yelling about the car parked in front of his home, and the two began yelling at each other. *Id.* In the course of this interaction, Gladden became increasingly more irate and eventually punched Appellant in the face. *Id.* Gladden testified that he did not remember how many times he struck Appellant. *Id.* Appellant began to move away from Gladden, at which point Gladden grabbed a plank from one of the broken pallets outside the trailer and threw it at Appellant, striking him. (T. at 191-192). Appellant then told Gladden "you're dead" and referenced getting his brothers. (T. at 192). The altercation ended, and Gladden returned to his house while Appellant went another direction. *Id.*

**{¶11}** Appellant placed a FaceTime call to his brother, Jamarr McConnell, and told him about Gladden beating him up. (T. at 451-452, 455). At the time of the call, Jamarr was in his home with his cousin, Terrel McConnell - a home that Appellant, Jamarr, and Terrel shared and which is only a couple of blocks away from Workman's home. After the call with Appellant, Jamarr grabbed a loaded semi-automatic rifle and got into a vehicle driven by Terrel, who drove him to an alley above Gladden's property where they were seen by two witnesses. (T. at 459-461).

**{¶12}** After Jamarr and Terrel were in the alley, Appellant began trying to get Gladden's attention and succeeded in getting Gladden to open his door. Appellant then ran. (Tr. 193) After Gladden saw Appellant flee, he saw a man in a ski mask on the hillside about seventy yards away. (T. at 193). Jamarr then opened fire with 23 separate shots at

Gladden, at his home, at his children's bedrooms, and at his porch. (T. at 193-94, 199-204).

{¶13} Gladden was struck in the arm and bled profusely. (T. at 194). Jamarr returned to his home with Terrel, which they quickly fled from. (T. at 470-471).

{¶14} Appellant called only one witness – his brother, Jamarr McConnell. Jamarr admitted that he understood Workman's home was a crack house (T. at 444-445); that there was a FaceTime call about the altercation (T. at 454-455); that he did travel to an alley and move through a field prior to shooting (T. at 461-469); that he fired the gun 23 separate times (T. at 469-470); and that he was wearing a ski mask. (T. at 469-470).

{¶15} Following deliberations, the jury convicted Appellant on all seventy (70) counts.

{¶16} On March 29, 2022, a sentencing hearing was held wherein the trial court sentenced Appellant to an aggregate prison sentence of thirty-one (31) years, of which twenty-eight (28) years are mandatory. He was also given two (2) to five (5) years of mandatory post-release control and required to register as a Violent Offender for a period of ten (10) years.

{¶17} Appellant now appeals, raising the following assignments of error for review:

### ASSIGNMENTS OF ERROR

{¶18} "I. MCCONNELL WAS DENIED HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL WHEN THE TRIAL COURT ACTED CONTRARY TO LAW IN PROVIDING AN ACCOMPLICE JURY INSTRUCTION.

**{¶19}** "II. REPEATED AND PERVASIVE MISCONDUCT BY THE PROSECUTOR PREJUDICIALLY AFFECTED MCCONNELL'S SUBSTANTIAL RIGHTS AND DENIED HIM A FAIR AND IMPARTIAL TRIAL.

**{¶20}** "III. THE FAILURE OF THE TRIAL COURT TO PROPERLY MERGE ALLIED OFFENSES FOR THE PURPOSES OF SENTENCING VIOLATED MCCONNELL'S PROTECTIONS AGAINST DOUBLE JEOPARDY AND WERE CONTRARY TO OHIO LAW.

**{¶21}** "IV. THERE WAS INSUFFICIENT EVIDENCE THAT JUAN MCCONNELL ACTED AS AN ACCOMPLICE TO SUSTAIN A CONVICTION UNDER THE UNITED STATES AND OHIO CONSTITUTIONS."

**I.**

**{¶22}** In his first assignment of error, Appellant argues the trial court erred in providing an accomplice instruction to the jury. We disagree.

**{¶23}** The determination of whether to give a jury instruction is a matter left to the sound discretion of the trial court. A trial court is obligated to provide jury instructions which correctly and completely state the law. *Cromer v. Children's Hospital Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921. The jury instructions also must be warranted by the evidence presented in the case. *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St.3d 300, 2010-Ohio-1041, 927 N.E.2d 1112. The question of whether a jury instruction is legally correct and factually warranted is subject to *de novo* review. *Id.* An inadequate instruction which misleads the jury constitutes reversible error. *Marshall v. Gibson*, 19 Ohio St.3d 10, 482 N.E.2d 583 (1985).

**{¶24}** Our standard of review when it is claimed improper jury instructions were given is to consider the jury charge as a whole and determine whether the charge misled the jury in a manner affecting the complaining party's substantial rights. *Lowder v. Domingo*, 5th Dist. Stark No. 2016CA00043, 2017-Ohio-1241, 2017 WL 1231724.

**{¶25}** Concerning accomplice testimony, R.C. §2923.03(D) provides that:

If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:

"The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.

It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."

**{¶26}** The trial court in this case gave the above instruction to the jury. Appellant herein argues that, in this case, the instruction was improper and should not have been given because Jamarr testified on behalf of Appellant and not against him.

**{¶27}** Upon review, we reject Appellant's contention that the statute applies only when an accomplice testifies for the State. We find that same was consistent with the

legislative intent of the statute. In *State v. Ramsey,* 8th Dist. Cuyahoga No. 83026, 2004-Ohio-3618, 2004 WL 1532287, in support of its proposition.

> The legislative intent of the statute "is to warn juries of the motivations that accompany accomplice testimony in a strong and uniform manner." *State v. Williams,* 117 Ohio App.3d 488, 495 [690 N.E.2d 1297] (1st Dist.1996). In short, the policy behind the practice of so instructing the jury is to alert the jury to the possibility of perjured testimony. *United States v. Nolte,* 440 F.2d 1124, 1126 ( [5th Cir.] 1971). "When an accomplice testifies for the prosecution he may have an interest in prevaricating in favor of the prosecution to obtain favors or even immunity. On the other hand, when one accomplice testifies for another, there is always the chance that each will try to 'swear the other out of the charge.' " *Id.,* citing *Washington v. Texas,* 388 U.S. 14, 21–23 [87 S.Ct. 1920, 18 L.Ed.2d 1019] (1967). Thus, the charge should be given whether the accomplice testifies for the defense or the prosecution.

*Ramsey, supra,* at ¶ 49.

**{¶28}** We further find that the instructions read as a whole are not confusing or misleading and did not prejudice Appellant's substantial rights. The instructions given to the jury herein are legally correct, logically distinct and are not confusing.

**{¶29}** Finally, the record contains substantial evidence that Appellant was complicit in committing the crimes in this case. Consequently, even if the instruction was erroneous, we would find it harmless beyond a reasonable doubt. *State v. Bleigh,*

Delaware App. No. 09-CAA-03-0031, 2010-Ohio-1182, ¶ 119, citing *Neder v. United States* (1999), 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35.D

**{¶30}** Appellant's first assignment of error is overruled.

**II.**

**{¶31}** In his second assignment of error, Appellant argues that prosecutorial misconduct deprived him of a fair trial. We disagree.

**{¶32}** Appellant herein argues that the following actions by the prosecutor deprived him of a fair trial: statements and questions concerning drug dealing, as well as improper testimony and reliance in closing arguments on uncharged drug activity. He argues that such statements and testimony were irrelevant and unsupported by the facts.

**{¶33}** Appellant maintains that because Appellant was not charged with any crime involving drugs and no evidence established that he was involved in drug activity, such statements prejudiced the jury against him.

**{¶34}** The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *Sunbury v. Sullivan*, 5th Dist. Delaware No. 11CAC030025, 2012-Ohio-3699, 2012 WL 3525617, ¶ 30 citing *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. *State v. Treesh*, 90 Ohio St.3d 460, 464, 2001-Ohio-4, 739 N.E.2d 749.

**{¶35}** Allegations of prosecutorial misconduct implicate due process concerns, and the touchstone of the analysis is the " 'fairness of the trial, not the culpability of the prosecutor.' " *State v. Newton*, 108 Ohio St.3d 13, 2006-Ohio-81, 840 N.E.2d 593, ¶ 92, *quoting Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

If any misconduct occurred, the court must consider the effect it had on the jury "in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). With regard to each allegation of misconduct, we must determine whether the conduct was "improper, and, if so, whether [it] prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[A] defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶30 (8th Dist.2011), *citing State v. Williams*, 38 Ohio St.3d 346, 349–350, 528 N.E.2d 910 (1988).

*State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 109.

**{¶36}** Whether statements made by a prosecutor amount to misconduct and whether such statements render a trial fundamentally unfair are mixed questions of law and fact, which we review *de novo. United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009) *citing United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999) *citing United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993).

{¶37} Upon review, we find drugs and drug dealing were relevant issues in this case. Drugs were found in the house belonging to Garry Workman, which is where the victim first encountered Appellant. Drugs were also found in his cousin Terrel's room in the home Terrel shared with Appellant and Appellant's brother Jamarr.

{¶38} According to the state's theory of the case, Gladden's shooting was intertwined in an overall scheme that involved drugs and/or drug dealing in the area. Therefore, Appellant's involvement with Workman and Terrel, and the drug dealing taking place in and around these actors and their respective homes, was not wholly independent of the plan to shoot or kill Gladden. As a consequence, Appellant's involvement with those people and places was relevant to a determination concerning Appellant's complicity in the shooting of Gladden. Such evidence was also relevant to put the crimes in context and to show motive or common purpose.

{¶39} Evid.R. 401 provides that " 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence".

{¶40} We find that the prosecutor's questions met the broad test for relevance under Evid.R. 401

{¶41} As to statements made during closing arguments, both the prosecution and the defense have wide latitude during opening and closing arguments. *State v. Edwards*, 5th Dist. Licking No. 21CA0083, 2022-Ohio-3534, ¶ 34.

{¶42} Upon review, we find no error in the admission of the cited comments, in the context of the entire trial, and it is evident beyond a reasonable doubt the jury would have found Appellant guilty even without the comments.

**{¶43}** Appellant's second assignment of error is overruled.

**III.**

**{¶44}** In his third assignment of error, Appellant argues the trial court erred in failing to merge the allied offenses. We disagree.

**{¶45}** R.C. §2941.25, "Multiple counts," states:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶46}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, syllabus, the Supreme Court of Ohio held the following:

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors -the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

**{¶47}** The *Ruff* court explained at paragraph 26:

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

**{¶48}** Appellant herein was charged of one count of attempted murder, 23 counts of felonious assault, 23 counts of discharging a firearm into a habitation, and 23 counts of discharging a firearm over a roadway. The trial court merged one count of felonious assault and one count of discharging a firearm into a habitation with the sole count of

attempted murder, explaining that those charges merged with regard to the single bullet that struck Robert Gladden. (Sent. T. at 26).

**{¶49}** We find the trial court did not err in determining that the remaining counts do not merge. Jamarr McConnell admitted to firing 23 separate shots at Robert Gladden. In addition to striking Gladden, those shots struck multiple objects in multiple rooms in Gladden's house, rooms where Gladden's wife and children could have been present at the time. Jamarr also fired those 23 shots over a roadway where cars and pedestrians could have been struck.

**{¶50}** We therefore find that each shot fired constituted a separate offense. As such, we find the trial court properly determined that the remaining counts do not merge, and Appellant could be sentenced on each count.

**{¶51}** Appellant's third assignment of error is overruled.

## IV.

**{¶52}** In his fourth and final assignment of error, Appellant argues that there was insufficient evidence that he acted as an accomplice in this matter. We disagree.

**{¶53}** The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶54} Ohio's Complicity statute, R.C. §2923.03, provides,

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) ...

{¶55} In the instant case, that culpability would be purposefully for attempted murder, under R.C. §2923.02 and R.C. §2903.02, and knowingly for the charges of felonious assault, discharging a firearm into a habitation, and discharging a firearm over a roadway, under R.C. §2903.11, R.C. §2923.161, and R.C. §2923.162, respectively.

{¶56} The testimony presented at trial included Mr. Gladden's testimony regarding his altercation earlier in the day with Appellant, Appellant's warning or threat to Gladden regarding calling his brothers and telling him "you're dead", Appellant knocking on Gladden's door and fleeing after he opened the door to a barrage of bullets, and being struck by one of the bullets.

{¶57} Further evidence was presented that a FaceTime call occurred between Appellant and his brother Jamarr McConnell after Gladden first encountered Appellant at Workman's house and before the shooting took place.

**{¶58}** It was also undisputed that Jamarr McConnell, wearing a ski mask, strategically placed himself across the street from Gladden's residence with the intention to shoot Gladden, then proceeded to fire 23 shots at him after he opened the door for Appellant, striking him once. Additionally, evidence was presented as to Appellant demonstrating "consciousness of guilt" in jail calls wherein Appellant says "they can't charge all of us with shooting one gun and then later states that he is "willing to do time" (T. at 324-326).

**{¶59}** Based on the foregoing, we find that the state presented sufficient evidence to support a finding of complicity as to all of the elements of the crimes charged including the culpable mental states attendant to each charge.

**{¶60}** Appellant's fourth assignment of error is overruled.

**{¶61}** Accordingly, the judgment of the Muskingum County Court of Common Pleas, Muskingum County, Ohio, is affirmed.

By: Wise, J.

Delaney, J., concurs.

Hoffman, P. J., concurs separately.

JWW/kw 0222

*Hoffman, P.J., concurring*

**{¶62}** I concur in the majority's analysis and disposition of Appellant's second, third, and fourth assignments of error.

**{¶63}** I further concur in the majority's disposition of Appellant's first assignment of error. However, I disagree with the majority's conclusion giving the accomplice instruction was not error. R.C. 2923.02(D) specifically applies when the accomplice testifies **against** the defendant. Such was not the situation here.

**{¶64}** Although I find it error to have given the instruction, I agree with the majority there was substantial evidence of Appellant's complicity in the charges. I would find the error to be harmless.